IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CINDY MOYA,
    *Plaintiff,*

vs.

ECOLAB USA INC.,
    *Defendant.*

§
§
§
§
§
§
§
§

Civil Action No. 4:25-cv-02591

JURY TRIAL DEMANDED

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Cindy Moya now files this Complaint against Defendant Ecolab USA Inc.  In support, Plaintiff states as follows:

### PARTIES

1.      Plaintiff Cindy Moya ("Moya" or "Plaintiff") is a citizen of the United States and a resident of Houston, Texas.

2.      Defendant Ecolab USA Inc. ("Ecolab" or "Defendant") is a private entity authorized to transact business in the state of Texas.  It may be served with process through its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201 or as may otherwise be permitted under Rule 4 of the Federal Rules of Civil Procedure and/or the Texas long-arm statute.

3.      Defendant is an employer within the definition of Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

4.      Defendant has over 500 employees and did so during Plaintiff's employment.

### JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the claims described in this Complaint pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law.

6.      This Court has personal jurisdiction over Defendant because it has continuously and systematically performed a substantial amount of business within the state of Texas and, moreover, is being sued herein for illegal conduct against Plaintiff that occurred within the state of Texas.  Accordingly, this Court has both general and specific jurisdiction over Defendant.

7.      Venue is proper in the United States District Court for the Southern District of Texas pursuant to 42 U.S.C. § 2000e-5(f)(3) because all or part of the unlawful employment practices committed by Defendant occurred in this district.

## FACTS

8.      Plaintiff Cindy Moya ("Moya" or "Plaintiff") began working at Defendant on or around September 7, 2021, as a senior chemist.

9.      Moya is female.

10.      Moya had the qualifications and education necessary to be a senior chemist at Defendant. Therefore, Moya was qualified for her position.

11.      Moya never received any disciplinary action or write-up at Defendant.

12.      Moya was the only female chemist in her department at Defendant.

13.      In or around October of 2023, Defendant promoted Omer Gul to be a program lead, making him Moya's immediate supervisor at that point forward.

14.      Omer Gul is male.

15.      As Moya's immediate supervisor, Omer Gul was in a managerial, supervisory capacity at Defendant.

16.      Upon information and belief, Omer Gul's position in a managerial, supervisory capacity at Defendant included him having decision-making authority on employment matters, which may have included hiring, firing, and promoting employees.

17.    From the time Omer Gul became Moya's supervisor at Defendant, Moya noticed that Gul treated her less favorably than other male employees, including another chemist named Josh Tellez.

18.    Josh Tellez is male.

19.    Josh Tellez and Moya shared the same supervisor (Omer Gul), and the same job duties as chemists at Defendant.

20.    Upon information and belief, Moya had other male counterparts similarly situated to her at Defendant, including two other male chemists named Ryan Duty and Pablo Farias.

21.    From the time he became her supervisor, Omer Gul's less favorable treatment of Moya as a woman included constantly talking down to, shouting at, and belittling her while treating her male counterparts with respect.  For example, Gul constantly addressed Moya as *"Miss Senior Chemist"* in a condescending manner in front of others during meetings or discussions to demean Moya and humiliate her.

22.    However, Omer Gul would not address male employees at Defendant as "Mister Senior Chemist" in a condescending manner as he did to Moya.

23.    As another example of Omer Gul's chauvinistic, immature, and discriminatory treatment of Moya as a woman, despite being somewhat formal in emails out of necessity (reserving the *"Miss Senior Chemist"* label, the screaming and shouting, and belittling for when they interacted in person), Gul would have male employees communicate tasks or direction to Moya instead of having to address her himself, as if talking to her was beneath him.  This behavior from Gul was weekly, if not daily, during Moya's employment at Defendant.

24.    As another example of Omer Gul's less favorable treatment of Moya as a woman, Gul made Moya attach his name as a lead author on her work she was involved in for over two

3

years (essentially stealing credit) at Defendant without doing so to the male chemists. When Moya

complained of this discriminatory treatment, Gul would say, "You don't understand the technical

aspects", when Moya did all the work, as if Gul believed a woman would not have the same

knowledge or be as smart as a man.

26. Not only was Omer Gul's chauvinistic actions of insisting that he take credit for

Moya's work that she had worked on for two years by being named as a lead author annoying,

unprofessional, and discriminatory, but it also hindered Moya's professional development and

ability to advance and be promoted in her career as a senior chemist.

26. As another example of Omer Gul's less favorable treatment of Moya as a woman,

Omer Gul would assign Ryan Duty, another male chemist, favorable reaction projects and promote

Mr. Duty's professional development and make Moya check his work and assist him, but he would

not allow Moya to do her own reaction projects for professional development purposes. Gul

essentially put Moya in "supportive" roles for other male chemists to allow their careers to develop

while she was expected to stand silently behind them doing substantially the same (or more) work.

27. Moya reported Omer Gul's discriminatory treatment to another supervisor named

Elizabeth "Liz" Balapitiya and Human Resources multiple times at Defendant, but they never did

anything other than listen to Moya's discrimination complaints and downplay them in writing to

complaints of "incidents" other than unlawful sex discrimination to avoid liability and turn the

other cheek to unlawful employment practices within Defendant's walls. In fact, this was not the

only time during Moya's employment that Defendant handled her complaints of unlawful

discrimination poorly. Back in 2022, Moya worked with another male chemist named Tannon

Woodson, who would physically touch Moya and give her sexually charged massages on her back.

Moya told Balapitiya this was happening, but nothing was ever done. It was later discovered that

Balapitiya had to receive training and/or counseling on handling harassment complaints because she did not tell Human Resources that Moya had come forward with a sexual harassment complaint.

28.     In or around January of 2024, Moya learned that she was being paid at a lesser rate than males who performed substantially the same work as she did.  Thereafter, Moya requested a compensation analysis (*i.e.*, a pay study) in or around April of 2024.  However, Omer Gul informed Moya that her request for a pay study by Human Resources was denied.

29.     On or around August 24, 2024, during a one-on-one meeting between Moya and Omer Gul, Gul was becoming aggressive towards Moya, which included his usual demeaning tone along with screaming and shouting.  At one point, Moya stopped the meeting and told Omer Gul he was being aggressive towards her and that she was going to report him for it.  As Moya began walking away from Gul to report him, Gul chased after her and physically stopped her by forcibly grabbing her by the arm and holding the hallway door shut next to the shipping and receiving department. Moya was eventually able to pull away and leave his confinement and reported this immediately to Elizabeth Balapitiya.

30.     Omer Gul had never physically assaulted a male or falsely imprisoned an employee at Defendant like he did Moya.

31.     Thereafter, Defendant did not discipline Omer Gul after he assaulted a female subordinate, despite Moya's previous human resources complaints about his discriminatory treatment of her leading up to the assault.

32.     Realizing that Omer Gul's harassment was getting worse and going unchecked by Defendant, along with being ignored for her sex discrimination complaints and pay discrimination complaints previously, Moya felt unsafe at work and believed that the only thing she could do was

resign.  Thus, on September 23, 2024, after being told by Elizabeth Balapitiya in a meeting that Gul would simply be counseled and coached about "Diversity, Equity, and Inclusion," Moya gave Balapitiya her two-week notice in a letter that was dated September 20.  Moya informed Balapitiya that her last day would be October 4, 2024.

33.    However, instead of honoring Moya's notice and allowing her to work until October 4, 2024, Defendant, in retaliation for Moya's previous discrimination complaints, terminated her early on September 24, 2024.

34.    Upon information and belief, after Moya was terminated early on September 24, 2024, Defendant did nothing further to investigate her discrimination complaints (including pay discrimination) against Omer Gul or discipline him.  However, Defendant was certainly put on notice that Moya's complaints were concerning unlawful employment discrimination due to the fact that the empty "coaching and counseling" it conducted for Gul was specifically about "Diversity, Equity, and Inclusion".

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

35.    On November 12, 2024, Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission Civil Rights Division ("TWC").

36.    The EEOC issued Plaintiff a Right to Sue letter on or about March 7, 2025.

37.    This lawsuit has been filed within 90 days of the EEOC's issuance of that Notice. Consequently, this lawsuit has been filed within 90 days of Plaintiff's receipt of that Notice.

38.    Based on the foregoing, Plaintiff has exhausted all administrative remedies required by Title VII.

### FIRST CAUSE OF ACTION (SEXUAL HARASSMENT)
#### TITLE VII AND TCHRA

39.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

40.     Plaintiff is a member of a protected class under Title VII because she is female.

41.     Plaintiff endured unwelcomed sex-based harassment from her supervisor, Omer Gul, who pervasively labeled her as "Miss Senior Chemist" and then physically assaulted her.

42.     Omer Gul's unwelcomed harassment, as a supervisor in a managerial capacity at Defendant, was so severe or pervasive that it altered the conditions of her employment.

43.     Omer Gul's harassment, including the physical assault of Plaintiff, is offensive to a reasonable person and were offensive to Plaintiff.

44.     Such conduct violates Title VII and the Texas Commission on Human Rights Act ("TCHRA").

45.     Plaintiff has been damaged by the discrimination against her.

46.     Defendants acted with malice and/or reckless disregard for Plaintiff's statutorily-protected rights.  An award of exemplary damages is therefore warranted.

### SECOND CAUSE OF ACTION (SEX AND PAY DISCRIMINATION)
#### TITLE VII, TCHRA, & EPA

47.     Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

48.     As previously stated, Plaintiff is a member of a protected class as a female.

49.     Plaintiff was qualified for her position at Defendant.

50.     Plaintiff suffered an adverse employment action when she was harassed and assaulted at work by her supervisor, Omer Gul.

51.     Defendant, by and through Omer Gul, also hindered Plaintiff from presenting work product as a sole author in order to advance her career and professional development, which

constituted an adverse employment action.

52.    Essentially, Plaintiff did not enjoy the same rights and privileges that her male counterparts had at Defendant.

53.    Plaintiff also suffered from an adverse employment action because she was constructively discharged from Defendant.

54.    Upon information and belief, Plaintiff was also paid less than her male counterparts for substantially the same work because she is female.

55.    Such conduct violates Title VII, the TCHRA, and the EPA.

56.    Plaintiff has been damaged by the discrimination against her.

57.    Defendants acted with malice and/or reckless disregard for Plaintiff's statutorily protected rights. Therefore, exemplary damages are warranted.

### THIRD CAUSE OF ACTION (RETALIATION)
TITLE VII, TCHRA, & EPA

58.    Plaintiff incorporates each of the foregoing allegations as if fully set forth herein.

59.    Plaintiff engaged in a protected activity under Title VII, the TCHRA, and the EPA at various times when she complained to management and Human Resources that Omer Gul was discriminating against her and treating her male counterparts differently and when she complained of pay discrimination, which included her request for a compensation analysis/pay study.

60.    Moya suffered from materially adverse action at Defendant, by and through Omer Gul, after her complaints of sexual harassment and pay discrimination when Gul increased his unlawful harassment to the level of physical assault, which ultimately led to Moya's constructive discharge.

61.    Thereafter, Moya suffered from materially adverse action at Defendant when she was terminated earlier than the October 4, 2024 date she gave in her resignation letter.

8

62.     Had Plaintiff not complained of unlawful employment discrimination, she would not have suffered from materially adverse employment actions at Defendant.

63.     Such conduct violates Title VII, the TCHRA, and the EPA.

64.     Plaintiff has been damaged by the retaliation against her.

65.     Defendants acted with malice and/or reckless disregard for Plaintiff's statutorily-protected rights.  An award of exemplary damages is therefore warranted.

### ATTORNEY'S FEES

66.     If Plaintiff prevails, she is entitled to an award of reasonable and necessary attorney's fees.

### LIQUIDATED DAMAGES

67.     Defendant's actions of pay discrimination under the EPA were willful, entitling Plaintiff to liquidated damages.

### JURY DEMAND

68.     Plaintiff hereby demands a trial by jury on all claims that may be tried to a jury.

### PRAYER FOR RELIEF

Plaintiff hereby prays that Defendant be cited to appear and that, upon trial, the Court enter a judgment in her favor for the following:

a) Back pay;
b) Compensatory damages;
c) Emotional distress and mental anguish damages;
d) Liquidated damages;
e) Punitive damages;
f) Reinstatement and/or front pay;
g) Taxable court costs;
h) Exemplary damages;
i) Attorney's fees; and
j) Such other and further relief to which she may show herself entitled.

9

Respectfully submitted,

THROCKMORTON LAW FIRM PLLC

By: */s/Connor Throckmorton*
Connor Throckmorton
S.D. Tex. #3065092
TX Bar #24103965
5718 Westheimer Road, Suite 1000
Houston, Texas 77057
Telephone:     (713) 400-6173
Facsimile:     (713) 583-8380
Email:          connor@throckmortonlaw.com

***ATTORNEY FOR PLAINTIFF***

10